Brian A. E. Smith (SBN 188147)
Alden KW Lee (SBN 257973)
Jeffrey D. Chen (SBN 267837)
Joseph J. Fraresso (SBN 289228)
BARTKO, ZANKEL, BUNZEL, & MILLER
One Embarcadero Center
San Francisco, CA 94111
T: 415-956-1900
Email: bsmith@bzbm.com
Email: alee@bzbm.com
Email: jchen@bzbm.com
Email: jfraresso@bzbm.com

Jonathan T. Suder (*Pro Hac Vice*)
Corby R. Vowell (*Pro Hac Vice*)
Dave R. Gunter (*Pro Hac Vice*)
FRIEDMAN, SUDER & COOKE
604 East 4th Street, Suite 200
Fort Worth, TX 76102
T: 817-334-0400
F: 817-334-0401
jts@fsclaw.com
vowell@fsclaw.com
gunter@fsclaw.com

Michael F. Heim (*Pro Hac Vice*)
R. Allan Bullwinkel (*Pro Hac Vice*)
Christopher M. First (*Pro Hac Vice*)
HEIM, PAYNE & CHORUSH, LLP
1111 Bagby Street, Suite 2100
Houston, Texas 77002
T: 713-221-2000
F: 713-221-2021
mheim@hpcllp.com
abullwinkel@hpcllp.com
cfirst@hpcllp.com

*Counsel for Plaintiff, Packet Intelligence LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| PACKET INTELLIGENCE LLC,<br><br><br>Plaintiff,<br><br>v.<br><br>JUNIPER NETWORKS, INC.,<br><br>Defendant. | Case No. 3:19-cv-04741-WHO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY DR. KEVIN ALMEROTH**<br><br>Hearing Date: July 8, 2020<br>Hearing Time: 2:00 P.M.<br>Place: Courtroom 2, 17th Floor<br>Judge: The Honorable William H. Orrick |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................................iii

I.      INTRODUCTION...............................................................................................1

II.     STATEMENT OF THE ISSUES TO BE DECIDED ......................................2

III.    STATEMENT OF RELEVANT FACTS............................................................2

        A.      Dr. Almeroth's Work on Behalf of Packet Intelligence ......................2

        B.      Dr. Almeroth's Work on Behalf of Juniper.........................................3

IV.     LEGAL STANDARD ........................................................................................5

V.      ARGUMENT ......................................................................................................6

        A.      Conclusory Statements about Confidential Information Not Enough...................7

        B.      Analysis of Prior Art Does Not Implicate Juniper Confidential Information........9

        C.      Juniper's Implied Accusations Are Incorrect......................................10

        D.      Packet Intelligence Will Be Significantly Prejudiced by Disqualification...........11

        E.      Juniper Waived its Objection to Dr. Almeroth......................................12

VI.     CONCLUSION ................................................................................................13

CERTIFICATE OF SERVICE......................................................................................14

1

<u>**TABLE OF AUTHORITIES**</u>

2

<u>**Cases:**</u>

3

4

*Campbell Indus. v. M/V Gemini,*
 619 F.2d 24 (9th Cir. 1980) ............................................................5

5

6

*Cent. Milk Producers Coop. v. Sentry Food Stores,*
 573 F.2d 988, 992 (8th Cir. 1978).................................................12

7

8

*CreAgri, Inc. v. Pinnaclife, Inc.,*
 2013 U.S. Dist. LEXIS 178534 *16 (N.D. Cal. Dec. 13, 2013))......................8

9

10

*Dolby Labs v. Lucent Techs., Inc.,*
 2003 U.S. Dist. LEXIS 178534 *16 (N.D. Cal. Dec. 13, 2013) ......................8

11

12

*Finisar Corp. v. Nistica, Inc.,*
 2015 U.S. Dist. LEXIS 94975 (N.D. Cal. July 21, 2015) ................................8

13

*Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.,*
 202 F.R.D. 426, 429 (E.D. Pa. May 8, 2001)) ..............................................7-8

14

15

*Hewlett-Packard Co. v. EMC Corp.,*
 330 F.Supp.2d 1087 (N.D. Cal. 2004)..........................................................5

16

17

*Hewlett-Packard,*
 330 F. Supp. 2d at 1092...........................................................................5, 6

18

19

*Hewlett-Packard,*
 330 F. Supp. 2d at 1098.............................................................................6

20

21

*High Point Sarl v. Sprint Nextel Corp.,*
 2013 U.S. Dist. LEXIS 17366, *16 (D. Kan. Feb. 8, 2013)............................6

22

23

*In re JDS Uniphase Corp. Sec. Litig.,*
 2006 U.S. Dist. LEXIS 75123 *10 (N.D. Cal. Sept. 29, 2006)  ......................7

24

25

*Koch Ref. Co. v. Jennifer L. Boudreaux MV,*
 85 F.3d 1178 (5th Cir. 1996) ......................................................................5

26

27

*Novartis AG v. Apotex Inc.,*
 2011 U.S. Dist. LEXIS 15177, at *9-11 (D.N.J. Jan. 24, 2011)......................9

28

*Packet Intelligence LLC v. NetScout Sys, Inc.,*
 No. 2:16-cv-230-JRG (E.D. Tex.)...............................................................3

*Packet Intelligence LLC v. Nokia of America Corp.*
No. 2:18-cv-00382 (E.D. Tex.) ........................................................................ 2

*Packet Intelligence LLC v. Sandvine Corp.*,
No. 2:16-cv-00147 (E.D. Tex.). ...................................................................... 3

*Palmer v. Ozbek*,
144 F.R.D. 66 (D. Md. 1992) ........................................................................... 5

*Palo Alto Networks, Inc. v. Packet Intelligence LLC*,
Case No. 3:19-cv-02471-WHO ................................................................. 2, 12

*Proctor & Gamble Co. v. Haugen*,
184 F.R.D. 410 (D. Utah 1999) ....................................................................... 5

*Syngenta Seeds, Inc. v. Monsanto Co.*,
2004 U.S. Dist. LEXIS 19817, at *10-11 (D. Del. Sept. 27, 2004) ................. 9

*Travelers Ins. Co. v. Liljeberg Enterprises*,
38 F.3d 1404, 1410 (5th Cir. 1994) .............................................................. 12

*United States v. Salamanca*,
2003 DSD 1, 244 F. Supp. 2d 1023 (D.S.D. 2003) ......................................... 5

Packet Intelligence LLC ("Packet Intelligence") files this Opposition to Juniper Networks, Inc.'s ("Juniper") Motion to Disqualify Dr. Kevin Almeroth as an Expert Witness for Packet Intelligence ("Motion") and respectfully shows as follows.

## I.   INTRODUCTION

Juniper seeks to disqualify Packet Intelligence's long-term technical expert, Dr. Almeroth, based on a single engagement for patent validity work for Juniper over six years ago. That work did not include litigation, and involved unrelated patents before the Patent Trial and Appeal Board. Since 2016, Dr. Almeroth has worked with Packet Intelligence continuously providing litigation consulting, expert reports, testimony at deposition and trial, as well as expert declarations for *inter partes review* (IPR) proceedings at the Patent Office—all related to the same patents being asserted by Packet Intelligence here. Considering that Dr. Almeroth had only one limited prior engagement for Juniper several years ago, the facts set forth in its Motion fall far short of those required by courts to impose the drastic remedy of disqualifying an expert for litigation. Nor can these facts justify the significant prejudice to Packet Intelligence.

Dr. Almeroth's work for Juniper involved a patent dispute with its competitor, Palo Alto Networks, Inc. ("Palo Alto Networks"). The testimony Dr. Almeroth provided on behalf of Juniper (by declaration) supported Juniper's positions on the validity of two Juniper patents it was asserting against Palo Alto Networks. Dr. Almeroth's declarations were limited to questions of claim construction and validity of those two Juniper patents. Juniper claims to have provided confidential information to defend validity challenges in *inter partes* review ("IPR") proceedings, but those proceedings had no bearing on infringement. Indeed, Juniper provided no evidence that Dr. Almeroth undertook an infringement analysis or performed *any* work related to the <u>litigations</u> between Juniper and Palo Alto Networks. Juniper's failure to do so is dispositive because disqualification requires Juniper to establish that it *in fact* provided confidential information to Dr. Almeroth that is relevant to *this litigation*. Juniper did not even try to make such a showing. Instead, any information Juniper disclosed to Dr. Almeroth was to address validity in the IPR proceedings. Simply put, Juniper did not meet its burden to show the Court should resort to the drastic remedy of disqualification here.

Juniper has also conceded it will not object to Packet Intelligence's use of Dr. Almeroth's testimony for claim construction because Dr. Almeroth also provided similar testimony as part of the claim construction disclosures in the copending, related case between Packet Intelligence and Palo Alto Networks. Indeed, Dr. Almeroth will also testify in the Palo Alto Networks case on validity issues. There is significant overlap in both Palo Alto Networks' and Juniper's Invalidity Contentions, in which both rely on essentially the same prior art and invalidity theories. In fact, Juniper and Palo Alto Networks joined as co-petitioners to advance many of these shared invalidity theories in seven co-pending IPRs. As a result, the Court will already be hearing testimony from Dr. Almeroth concerning claim construction issues and validity theories that are common to both cases.

Finally, the Court should not disqualify Dr. Almeroth because the undue prejudice Packet Intelligence would suffer would significantly outweigh the hypothetical and predominantly unsubstantiated concerns raised by Juniper. Juniper's choice to strategically sit on its objections for several months until the eve of claim construction briefing underscores this undue prejudice. Thus, Juniper has waived any objection it may have had.

## II.  STATEMENT OF THE ISSUES TO BE DECIDED

Whether Juniper has met its burden to show that Dr. Kevin Almeroth should be disqualified from testifying as an expert on behalf of Packet Intelligence on claim construction, validity, or infringement issues.

## III.  STATEMENT OF RELEVANT FACTS

### A.  Dr. Almeroth's Work on Behalf of Packet Intelligence

Packet Intelligence has engaged Dr. Almeroth as a technical expert for all aspects of the patents in this litigation for the past four years. Exh. A to Vowell Decl. He has assisted Packet Intelligence in analyzing claim construction issues, validity issues involving many prior art references, and infringement issues involving accused products of various infringers. Dr. Almeroth has provided declarations in support of Packet Intelligence's claim construction positions in *Packet Intelligence LLC v. Nokia of America Corp.*, No. 2:18-cv-00382 (E.D. Tex.) as well as the *Palo Alto Networks* matter pending before this Court. Further, Dr. Almeroth has provided expert

reports on behalf of Packet Intelligence on both infringement and validity in *Packet Intelligence LLC v. NetScout Sys, Inc.*, No. 2:16-cv-230-JRG (E.D. Tex.) as well as *Packet Intelligence LLC v. Sandvine Corp.*, No. 2:16-cv-00147 (E.D. Tex.). Both cases went to trial, and Dr. Almeroth testified as the technical expert for Packet Intelligence in each. In addition, Dr. Almeroth has provided expert declarations to defend the validity of Packet Intelligence's patents in connection with the following IPR proceedings filed by Sandvine Corporation: IPR2017-00450, IPR2017-00451, IPR2017-00629, IPR2017-00630, IPR2017-00769, and IPR2017-00862.

### B.    Dr. Almeroth's Work on Behalf of Juniper

Juniper engaged Dr. Almeroth as a technical consultant in December 2013 as part of its patent dispute with Palo Alto Networks. *See* Motion, Exh. A (engagement letter). The engagement letter does not address any specific activities that Dr. Almeroth was to perform, such as any particular activities directed to the litigation between the parties. The information about Dr. Almeroth's activities on behalf of Juniper and the information disclosed to him by Juniper pertained only to two IPR proceedings over the validity of Juniper patents, redacted excerpts of a declaration that Dr. Almeroth executed in connection with one of the IPRs, and the declaration of Juniper's outside counsel, David McPhie. Based on the information provided by Juniper, all the activities and analysis undertaken by Dr. Almeroth in his limited engagement related to the validity of two of Juniper's own patents, U.S. Patent Nos. 7,107,612 ("the '612 patent") and 7,734,752 ("the '752 patent"). There is no mention by Juniper of any analysis or other activity that Dr. Almeroth performed with respect to the pending litigations between the two parties. In particular, Juniper did not describe any analysis done by Dr. Almeroth of infringement by Juniper of any patents or any indication that any patents in the Juniper, Palo Alto Networks litigation had anything to do with infringement by Juniper of the claims of any of the patents at issue in this case. The only indication of any involvement of any of the patents asserted in this case against Juniper is a cursory statement that the '099 Patent fails to render obvious one of Juniper's two patents. *See* Motion, Exh. B, at ¶ 353.

According to Juniper's Motion, Dr. Almeroth prepared declarations for two IPR proceedings. For IPR 2013-00466, Dr. Almeroth analyzed prior art references asserted to

invalidate Juniper's '752 patent. For IPR2013-00369, Dr. Almeroth provided an analysis of prior art references cited against the '612 patent and a nonobviousness analysis of he same patent. The prior art references cited in both IPRs are of public record, and Dr. Almeroth's analysis was based on publicly available information rather than Juniper confidential information. In both declarations, he provided his independent opinion of the technology involved in the Juniper patents, the scope of their respective claims, and the content and scope of the publicly available prior art references.

Indeed, other than the nonobviousness analysis for the '612patent, Juniper does not claim any analysis Dr. Almeroth performed for the IPR declarations turned on Juniper confidential information. And while Dr. Almeroth was deposed in connection with one of the IPR proceedings, Juniper does not contend that it supplied any confidential information to him about the operation of their products here related to the deposition or his preparation. Nor does Juniper provide the deposition transcript, which presumably would reflect how Dr. Almeroth was involved in the prior engagement.

Juniper contends in its Motion that it disclosed confidential information about the SRX and MX series of Juniper products for purposes of the nonobviousness analysis. Nothing in the attached Almeroth Declaration suggests that Dr. Almeroth relied on information specific to those products other than information related to the JUNOS operating system. There is no dispute that Dr. Almeroth did not perform an infringement analysis using Juniper confidential information as part of his work on the Juniper IPRs.

Juniper contends that the declaration of Juniper's prior counsel, Mr. McPhie, describes confidential information that he disclosed to Dr. Almeroth related to the pending litigations between Juniper and Palo Alto Networks. But, Mr. McPhie only makes conclusory statements about confidential information in the declaration, which cannot support the drastic remedy of disqualification. Specifically, Mr. McPhie alludes to general conversations:

> As part of Dr. Almeroth's work for Juniper, I had multiple conversations with him in person and over the phone in which we discussed privileged and confidential information belonging to Juniper. These discussions included litigation strategy as well as substantive arguments regarding Juniper products and the prior art, including the issues addressed in his expert reports.

McPhie Decl., at ¶8. Mr. McPhie states that he discussed some issues related to "Juniper products" and "prior art", but identifies no specific information disclosed to Dr. Almeroth that relates to the issues in this case.

Juniper's Motion and the McPhie declaration do not suggest Dr. Almeroth performed any work elated to the underlying litigations. Indeed, Mr. McPhie stated the total amount of money paid to Dr. Almeroth for the engagement but does not reveal how much time was devoted to any particular activity. The generality and vagueness of this declaration is telling given that it contains no evidence to support or at least corroborate his conclusions about Dr. Almeroth's involvement in the prior matters. The record suggests the opposite. All of Dr. Almeroth's work appears t related to the prior art analysis and IPR declarations, and there is no indication of how much time Mr. McPhie purportedly spent disclosing confidential information to Dr. Almeroth. Further, Juniper's Motion does not suggest that Dr. Almeroth ever did any work regarding infringement or other technical analysis related to any of Juniper's products, let alone any of the products accused in this litigation.

## IV.   LEGAL STANDARD

The courts have an inherent power to disqualify expert witnesses in order to protect the integrity of the legal process, to protect privileges that may otherwise be breached, and to promote public confidence in the legal system. *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004) (citing *Campbell Indus. v. M/V Gemini,* 619 F.2d 24, 27 (9th Cir. 1980)). Disqualification of an expert, however, is "a drastic measure that courts should impose only hesitantly, reluctantly, and rarely." *Hewlett-Packard*, 330 F. Supp. 2d at 1092. *See also Koch Ref. Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir. 1996); *United States v. Salamanca*, 2003 DSD 1, 244 F. Supp. 2d 1023, 1025 (D.S.D. 2003); *Proctor & Gamble Co. v. Haugen*, 184 F.R.D. 410, 413 (D. Utah 1999); *Palmer v. Ozbek*, 144 F.R.D. 66, 67 (D. Md. 1992).

When use of an expert is challenged based on their past relationship with a current adversary, the court may disqualify the expert if both 1) the adversary had a confidential relationship with the expert, and 2) the adversary disclosed confidential information to the expert

that is relevant to the litigation. *Hewlett-Packard*, 330 F. Supp. 2d at 1092-93. The party seeking to disqualify an expert bears the burden of establishing these two factors, and, if only one of the two factors is met, disqualification is inappropriate. *Id.* On top of the two factors above, the court should also consider whether disqualification would be fair to the affected party and would promote the integrity of the legal process. *Id.*

And courts have recognized that indiscriminate disqualification of experts in intellectual property cases has potential for abuse. *High Point Sarl v. Sprint Nextel Corp.*, 2013 U.S. Dist. LEXIS 17366, *16 (D. Kan. Feb. 8, 2013). The concern about too easily disqualifying experts is especially applicable to high-technology patent infringement cases, such as this one, where the courts and the public look to experts for explanations of complicated technologies. *Hewlett-Packard*, 330 F. Supp. 2d at 1098.

## V.    ARGUMENT

There is not a sufficient basis to disqualify Dr. Almeroth from testifying on behalf of Packet Intelligence in this litigation. Juniper has not contended that it provided any confidential information to Dr. Almeroth that would impact his claim construction analysis in this litigation. And Juniper has already conceded that it would not oppose the Court's consideration of Dr. Almeroth's claim construction declaration here given that it was also submitted in the related Palo Alto Networks case. The Court is conducting a common *Markman* hearing in the two cases, and the Court will be presented with Dr. Almeroth's testimony on claim construction regardless.

Similar to claim construction, Juniper has not alleged that it provided any confidential information to Dr. Almeroth in his prior engagement that would impact his validity analysis in this case. As a result, Juniper's argument for disqualification on validity issues does not satisfy the second factor of the test set forth in *Hewlett-Packard*. The prior art references raised by Juniper in its Invalidity Contentions here are of public record, and Dr. Almeroth's analysis of the prior art will depend on his review of the publicly available information. There is no confidential information that was disclosed to Dr. Almeroth that would have any bearing on his view of the prior art in *this litigation*. The information that Juniper allegedly disclosed to Dr. Almeroth presumably related to the non-obviousness of Juniper's own patents in the prior engagement and is

1   irrelevant to the prior art references cited by Juniper against the patents asserted in this case. There

2   is thus no reason to prevent Dr. Almeroth from testifying with respect to validity issues.

3       As with claim construction, Dr. Almeroth will be providing testimony in the Palo Alto

4   Networks case about validity, and in particular, the prior art references submitted in its Invalidity

5   Contentions. There is a significant overlap in the prior art references asserted by both Juniper and

6   Palo Alto Networks, and as a result, the Court will be presented with Dr. Almeroth's testimony in

7   the Palo Alto Networks case about the key prior art references, which are common to both cases.

8       The only potential issue in the current litigation that could be impacted by Dr. Almeroth's

9   prior engagement with Juniper is infringement. Dr. Almeroth presumably had access to *some*

10  confidential information that was used in his Juniper IPR Declaration to support the validity of

11  Juniper's patents. Yet, Juniper has not established that confidential information was disclosed has

12  any bearing on Dr. Almeroth's infringement analysis in *this case*. Beyond the conclusory and

13  unsubstantiated assertions made by Juniper and its prior counsel, Packet Intelligence is left to

14  guess what specific information was shared with Dr. Almeroth. Packet Intelligence has accused

15  several different Juniper product families of infringement, including the SRX, MX, and NFX

16  families of products. See Dkt. 1, at ¶ 28. Juniper's Motion and its exhibits suggest only that some

17  information related to the JUNOS operating system was provided to Dr. Almeroth. Juniper also

18  provides vague assertions that outside counsel discussed litigation strategy and information about

19  one or more of the accused products in the McPhie Declaration. Juniper has not established how

20  any information disclosed to Dr. Almeroth could harm Juniper in this case.

21      **A.    Conclusory Statements about Confidential Information Not Enough**

22      Juniper relies on unsubstantiated, conclusory statements in the McPhie Declaration as

23  support for its position that it disclosed confidential information to Dr. Almeroth that is relevant to

24  the current litigation. These types of general statements are not enough, and case law in this

25  District requires more specificity.

26      The party seeking disqualification cannot meet its burden by offering mere conclusory or

27  *ipse dixit* assertions. *In re JDS Uniphase Corp. Sec. Litig.*, 2006 U.S. Dist. LEXIS 75123 *10

28  (N.D. Cal. Sept. 29, 2006) (citing *Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*,

202 F.R.D. 426, 429 (E.D. Pa. May 8, 2001)). Several courts, including those in the Northern District of California, have found that conclusory statements such as those provided by Juniper in the McPhie declaration cannot to warrant disqualifying an expert in patent infringement cases. In *Finisar Corp. v. Nistica, Inc.*, 2015 U.S. Dist. LEXIS 94975 (N.D. Cal. July 21, 2015), the court held that even if there were a prior confidential relationship between the expert and the adversary, the cursory information provided to the expert about the litigation did not justify disqualification. *Finisar Corp.*, 2015 U.S. Dist. LEXIS 94975, at * 28-29. In that case, Finisar relied on general and conclusory assertions that its counsel previously disclosed information about its technology and invalidity strategy to the disputed expert. *Id.* The same is true here.

The *Finisar* court followed the reasoning of the court in *Hewlett-Packard* that the confidential information disclosed to the expert for purposes of disqualification *must be of particular significance*. (citing *Hewlett-Packard*, 330 F. Supp. 2d at 1094). Juniper cannot show that the information it disclosed to Dr. Almeroth related to secondary indicia of nonobviousness for its own patents is of any particular significance to the validity or infringement analysis in this case. While confidential communications may include discussions related to litigation, such as strategy, types of experts and their expected roles, and the strengths/weaknesses of the parties' cases, courts have found that technical information (such as that purportedly disclosed by Juniper) as opposed to legal advice is not considered confidential for purposes of the disqualification analysis. See *Finisar Corp.*, 2015 U.S. Dist. LEXIS 94975, at * 28 (citing *CreAgri, Inc. v. Pinnaclife, Inc.*, 2013 U.S. Dist. LEXIS 178534 *16 (N.D. Cal. Dec. 13, 2013)).

Another court in this District found that the party seeking disqualification must describe the specific confidential information disclosed and how it is relevant to the current litigation. *See Dolby Labs. v. Lucent Techs., Inc.*, 2003 U.S. Dist. LEXIS 27620 *4-5 (N.D. Cal. March 17, 2003). There, the court rejected disqualification because the challenging party failed to set forth "*specific* confidential information … relevant to the current litigation:

> While these conversations might have included material relevant to the current action, they also might have been innocuous. For instance, Ryan's understanding of the scope of the '598 patent might not have any impact on Brandenburg's independent understanding of this issue, either then or now. Likewise, the other general areas of discussion identified by Lucent may have no connection to the current suit. Lucent

> has not set forth, *in camera* or otherwise, *specific* confidential information passed from Ryan to Brandenburg which is relevant to the current litigation. Lucent would have the Court infer from a general description of the communications at issue over 12 years ago that confidential, relevant information must have been revealed.

*Id.* Similarly, Juniper has provided no specifics, and granting its Motion would require the Court to make significant inferences based on unsubstantiated, conclusory descriptions of the information supposedly conveyed. *See also, Novartis AG v. Apotex Inc.*, 2011 U.S. Dist. LEXIS 15177, at *9-11 (D.N.J. Jan. 24, 2011) (finding that the movant identified no confidential information specific to the subject matter underlying the litigation); *Syngenta Seeds, Inc. v. Monsanto Co.*, 2004 U.S. Dist. LEXIS 19817, at *10-11 (D. Del. Sept. 27, 2004) (declining to disqualify expert where movant failed to identify *specific* confidential information and failed to explain how the information related to the litigation).

As a result, the unsubstantiated statements in the McPhie declaration cannot warrant disqualifying Dr. Almeroth from testifying in this litigation.

### B.    Analysis of Prior Art Does Not Implicate Juniper Confidential Information

Juniper cites Dr. Almeroth's brief statements about the Dietz '099 patent (Motion, Exh. B, at ¶ 353) and the Check Point reference (Motion, Exh. B, at ¶ 360) in his Juniper IPR Declaration to support its arguments for disqualification. That he very briefly opined on public references related to the technology at issue in this case does not warrant disqualification. The legal test requires that the disclosed confidential information must be "relevant to the current litigation". *Hewlett-Packard*, 330 F. Supp. 2d at 1093. Juniper does not contend that it provided any confidential information to Dr. Almeroth regarding the Dietz patent or the Check Point reference, and nothing in Dr. Almeroth's analysis in the Declaration indicates otherwise. Even Juniper's Motion makes clear that Dr. Almeroth undertook "an independent attempt to identify related references" when he addressed the Dietz patent and Check Point reference. (Motion, Exh. B, at ¶¶ 334-35). He simply provides his opinion based on information he obtained independently.

Juniper also tries to tie the technology involved in the Juniper IPRs to the technology in the this case by noting that Dr. Almeroth's declaration related to claim construction contains the same or similar background paragraphs as the declarations he provided for Juniper's IPRs proceedings.

1   These sections of the declarations merely provide background information about basic network

2   principles and technologies—there is nothing confidential about that background information. For

3   example, the declarations describe the Open Systems Interconnection or OSI model for

4   transmitting packets of data over communication networks. The cited paragraphs introduce

5   information and concepts in the general field of network communications to aid the fact finder in

6   understanding more complicated advances in technology that are the subject of the patented

7   inventions. None of this background information includes or stems from confidential information

8   disclosed to Dr. Almeroth by Juniper nor is it specific to any Juniper products, and thus, provides

9   no basis for implementing the drastic measure of disqualification.

10          **C.      Juniper's Implied Accusations Are Incorrect**

11          Finally, Juniper's Motion implies that Dr. Almeroth breached his agreement by failing to

12   notify Juniper of his work on the Packet Intelligence cases. *See* Motion, at 10 ("Despite his

13   contractual obligations, Dr. Almeroth did not notify Juniper of his participation in this matter or

14   other matters."). But, the agreement requires that "[y]ou shall immediately notify Irell if any

15   person or entity to whom disclosure has not been authorized by Irell requests, subpoenas or

16   otherwise seeks to obtain any theories, opinions, facts, data information, testimony, reports,

17   documents or other materials . . . which relate or refer in any way to your work pursuant to this

18   agreement." Motion, Exh. A, at 2. Juniper's suggestion that Dr. Almeroth breached his agreement

19   is meritless. Packet Intelligence has not sought any confidential information from Dr. Almeroth,

20   and has disclosed no Juniper confidential information to Dr. Almeroth. Claim construction does

21   not implicate Juniper confidential information—nor does patent validity. Juniper should not be

22   rewarded for recklessly suggesting Dr, Almeroth, a highly regarded professor and expert,

23   intentionally breached his contractual agreement.

24          Juniper also seeks to imply that Packet Intelligence breached its obligations under the

25   Protective Order by failing to disclose Dr. Almeroth pursuant to the Protective Order. Motion, at 9

26   ("[A]lthough Juniper has produced confidential discovery in this matter, Packet Intelligence has

27   not disclosed Dr. Almeroth as an expert under the Court's interim protect order."). This improper

28   suggestion by Juniper is no less offensive. Packet Intelligence must disclose experts to Juniper

*prior* to sharing any confidential information with that expert. No such confidential information has been shared, thus no obligation to disclose Dr. Almeroth has been triggered.

Juniper's motion plays fast and loose by insinuating Dr. Almeroth breached an agreement and that Packet Intelligence violated a protective order. Such insinuations are not to be taken lightly, and Juniper's allegations are both offensive and careless.

**D.      Packet Intelligence Will Be Significantly Prejudiced by Disqualification**

The Court should also consider whether the disqualification would be fair to the affected party, Packet Intelligence, if Dr. Almeroth were disqualified. *Hewlett-Packard*, 330 F. Supp. 2d at 1093. The Court should consider whether Packet Intelligence would be unduly burdened by having to retain another expert and whether either party would be prejudiced. *Id.*, at 1095.

As described in section III above, Dr. Almeroth has performed a significant amount of work in the past for Packet Intelligence related to the patents asserted in litigation spanning several years. Dr. Almeroth has advised Packet Intelligence on the scope of the patents and claim construction issues, as well as issues related to prior art and infringement. He has been involved in multiple litigations on Packet Intelligence's behalf, including testifying at deposition and two trials. He has analyzed and addressed the prior art references involved in each of those litigations and several IPR proceedings. Almost all of the prior art references cited by Juniper in its Invalidity Contentions have been relied on in these prior matters. Thus, Dr. Almeroth has already studied these prior art references and can testify about their relevance without incurring the enormous cost and effort that would be required for a new expert to become equally knowledgeable about the asserted patents.

If Dr. Almeroth were excluded from testifying, Packet Intelligence would incur extensive additional cost given the amount of time and expense it will take to get another technical expert up to speed. The new expert would essentially have to start from square one analyzing several issues, including the specific details and file histories of the patented inventions, all of the issues raised in prior litigations, and all of the prior art that has been raised in the various litigations and IPR proceedings.

As a result, the prejudice to Packet Intelligence would significantly outweigh any potential

1  conflict of interest in this matter.

2       **E.     Juniper Waived its Objection to Dr. Almeroth**

3       Even if there were a basis for Juniper's request to disqualify Dr. Almeroth, Juniper has

4  waived any objection it could have made earlier in the litigation. "[I]t is well-settled that — for

5  obvious reasons — one seeking disqualification must do so at the earliest moment after knowledge

6  of the facts demonstrating the basis for such disqualification" *Travelers Ins. Co. v. Liljeberg*

7  *Enterprises,* 38 F.3d 1404, 1410 (5th Cir. 1994); *Cent. Milk Producers Coop. v. Sentry Food*

8  *Stores,* 573 F.2d 988, 992 (8th Cir. 1978) ("A motion to disqualify should be made with

9  reasonable promptness after a party discovers the facts which lead to the motion.").

10      Juniper was aware for several months that Packet Intelligence intended to use Dr.

11 Almeroth as its technical expert here, on at least claim construction, before it raised any objection.

12 Dr. Almeroth was previously disclosed as an expert on behalf of Packet Intelligence in the related

13 matter pending in this Court against Palo Alto Networks (the "PAN case"). *See Palo Alto*

14 *Networks, Inc. v. Packet Inetelligence LLC*, Case No. 3:19-cv-02471-WHO. Packet Intelligence

15 disclosed Dr. Almeroth as its claim construction expert in the Joint Claim Construction Statement

16 filed in the PAN case on December 17, 2019. PAN case, Dkt. 46, at 4. Juniper was aware of this

17 fact because, on January 7. 2020, Juniper's counsel attended the Joint Case Management

18 Conference involving both Palo Alto Networks and Juniper. PAN case, Dkt. 50. At the

19 conference, Juniper's counsel agreed to a joint *Markman* hearing and briefing deadlines between

20 the two cases with full knowledge that Packet Intelligence was relying on the testimony of Dr.

21 Almeroth.

22      Further, when Juniper jointly filed IPRs with Palo Alto Networks in early February 2020,

23 Juniper cited the prior testimony and declarations of Dr. Almeroth that was attached by Packet

24 Intelligence in earlier IPR proceedings. Packet Intelligence's specific intention to use Dr.

25 Almeroth here was confirmed on March 20, 2020 when Packet Intelligence disclosed Dr.

26 Almeroth for purposes of extrinsic evidence in its P.L.R. 4-2 disclosures to Juniper. On April 15,

27 2020 Packet Intelligence served a draft of the Joint Claim Construction Statement which again

28 confirmed its reliance on Dr. Almeroth as an expert for claim construction purposes. Juniper and

Packet Intelligence filed the Joint Statement with the Court on April 21, 2020 including Dr. Almeroth's declaration as Exhibit B. *See* Dkt. 46.

Juniper did not object to Dr. Almeroth's participation either in this Court or in the IPR proceeding. Instead, Juniper waited until the last minute to spring its objection on Packet Intelligence and only two weeks before Packet Intelligence's preliminary response deadline to Juniper's IPRs. Given that Juniper is relying on its own prior engagement of Dr. Almeroth as a basis for its objection, Juniper's delay in making its objection was intentional and only made at this time for strategic purposes. Juniper has therefore waived its right to assert such an objection.

## VI.  CONCLUSION

For all these reasons, Packet Intelligence requests that the Court deny Juniper's Motion in its entirety.

DATED:  June 12, 2020

By:  */s/ Corby R. Vowell*
Corby R. Vowell
*Counsel for Plaintiff,*
*PACKET INTELLIGENCE LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12TH day of June, 2020, a true and correct copy of the above and foregoing document has been provided, via electronic mail, to all counsel of record as follows:

Alan M. Fisch – alan.fisch@fischllp.com

R. William Sigler – bill.sigler@fischllp.com

Jeffrey M. Saltman – Jeffrey.saltman@fischllp.com

Adam A. Allgood – adam.allgood@fischllp.com

Ken K. Fung – ken.fung@fischllp.com